IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| DORIS ANNE COX, individually, and as | ) | |
| Executor for the Estate of HAROLD E. | ) | |
| COX, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 19-548 (MN) (SRF) |
| | ) | |
| v. | ) | |
| | ) | |
| CARRIER CORPORATION, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## **<u>MEMORANDUM OPINION</u>**

Ipek Kurul, DALTON & ASSOCIATES, P.A., Wilmington, DE; Adam Balick, Michael Collins Smith, Patrick J. Smith, BALICK & BALICK, LLC, Wilmington, DE – attorneys for Plaintiff

Beth E. Valocchi, Allison L. Texter, SWARTZ CAMPBELL, LLC, Wilmington, DE – Attorneys for Foster Wheeler, LLC

August 18, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

On July 16, 2021, Magistrate Judge Fallon issued a Report and Recommendation ("the Report") (D.I. 148) denying the motion for summary judgment filed by defendant Foster Wheeler LLC ("Defendant or "Foster Wheeler"). (D.I. 120). Presently before the Court are Foster Wheeler's objections (D.I. 150) to the Report. The Court has reviewed the Report, Defendant's objections, and Plaintiff's response thereto. (D.I. 155). The Court has also considered *de novo* the objected-to portions of the Report and the relevant portions of Defendant's motion for summary judgment (D.I. 120, 121), Plaintiff's response (D.I. 131) and Defendant's reply (D.I. 134). For the reasons below, Defendant's objections are OVERRULED, the Report is ADOPTED, and Defendant's motion for summary judgment is DENIED.

## I.     BACKGROUND

The Report correctly set out the procedural history of this case. (D.I. 148 at 1-5). On February 21 , 2019, Harold Cox ("Mr. Cox") and Doris Anne Cox ("Plaintiff") filed this case in the Delaware Superior Court, asserting claims arising from Mr. Cox's exposure to asbestos. (D.I. l, Ex. 1). On March 21, 2019, Foster Wheeler removed the case to this Court. On October 8, 2019, Mr. Cox passed away (D.I. 60; D.I. 86 ¶ 15), and thereafter, on May 13, 2020, Plaintiff, individually and in her capacity as executor of Mr. Cox's estate, filed an amended complaint reasserting claims arising from Mr. Cox's exposure to asbestos against several defendants, including Foster Wheeler. (D.I. 86). On September 2, 2020, Foster Wheeler moved for summary judgment. (D.I. 120).

The Report also sets forth the facts underlying the motions.  There is no dispute as to these facts,[1] and the Court adopts them below in their entirety (D.I. 143 at 2-5):

      i.     **Mr. Cox's alleged exposure history**

          1.     **Primary Exposures**

Plaintiff alleges that Mr. Cox developed mesothelioma as a result of exposure to Foster Wheeler's asbestos-containing equipment and replacement boiler components during his service as a boiler tender in the United States Navy onboard the *USS Chukawan.*  (D.I. 86 ¶¶ 4-21).  Accordingly, Plaintiff asserts claims for negligence, willful and wanton conduct, strict liability, loss of consortium, and wrongful death.  (D.I. 86)

Mr. Cox served in the United States Navy from 1965 through 1968.  (D.I. 131, Ex. A at 13:1-10).  From January 1967 through October 1968, Mr. Cox was on active duty serving onboard the *USS Chukawan.*  (*Id.* at 19: 1-20).  During the first year of his service onboard the *USS Chukawan*, Mr. Cox was an E-2 fireman, thereafter he was promoted to be an E-4 boiler tender.  (*Id.* at 19:11-20:2).  Mr. Cox worked directly on the Foster Wheeler boilers onboard the USS Chukawan.  (*Id.* at 22:8-23:2).

Mr. Cox removed the doors from the Foster Wheeler boilers in the boiler room of the *USS Chukawan* four times during his service.  (D.I. 131, Ex. B at 93: 18-94:6).  Mr. Cox removed the rope seal inside the Foster Wheeler boiler's doors twice.  (*Id.* at 95:16-22).  He used a knife to slice the rope out, which led to release of particles in the air.  (D.I. 131, Ex. A at 26:3-12).  Mr. Cox believed the rope contained asbestos.  (*Id.* at 25:23-27:5).  Mr. Cox cleaned gaskets on the boiler door using a scraper, a process that filled the air with asbestos particles.  (*Id.* at 27:7-23).  Mr. Cox also replaced the gaskets using a hammer, another process that led to particles filling the air.  (*Id*. at 28:3-23).

On twelve different occasions, Mr. Cox cleaned out fire tubes[2] inside one of the Foster Wheeler boilers onboard the *USS Chukawan.*  (D.I. 131, Ex. B at 89:2-10).  This work involved using a six- or seven-inch scraper to remove "carbon-like stuff" and dust.  (D.I. 131 , Ex. A at 22:8-23:10).  Mr. Cox believed this contained asbestos based on what he had heard other people say and based on the fact that fuel was being burned.  (D.I. 131, Ex. B at 91:25-92:16).  There were roughly

---

[1]    Foster Wheeler objected to the Report's reliance on Captain Lowell.  The only reference to Captain Lowell in the Report's recitation of the facts is in the last sentence of that section.  The Court addresses the specific objection to Captain Lowell in the discussion.

[2]    Plaintiff refers to this process as "[p]unching tubes," and counsel referred to "punching the tubes" during the deposition of Captain William Lowell, Plaintiffs' expert.  (D.I. 131 at 5, Ex. D at 80:6-15).

fifteen fire tubes in the *USS Chukawan*'s boiler room; each one was eight feet tall. (D.I. 131, Ex. A at 24:4-10).  Scraping these fire tubes took two twelve-hour days. (*Id.* at 24:21-25:3).  After doing this work, the sailors would cough up "black stuff" for about ten days.  (*Id.*).

### 2. Secondary Exposures

Mr. Cox spent about 12 hours per day in the boiler room during his service onboard the *USS Chukawan*.  (D.I. 131, Ex. A at 49:6-15).  Mr. Cox conducted morning checks that took about four hours, during which he stood on a second level catwalk directly above four boilers that were manufactured by Foster Wheeler located in each of the four corners of the boiler room.  (*Id*. at 20:7-22).  From the catwalk, Mr. Cox could see workers on the first floor below him scaping out fire tubes and replacing gaskets around the boiler doors.  (*Id.* at 22:8-21).  Particles generated by the work being conducted on the first floor rose with the heat to the second level while Mr. Cox was on the second-floor catwalk.  (*Id*. at 30:9-23).  This work occurred "all the time."  (*Id.* at 30:9-23).  After conducting his checks on the second level, Mr. Cox proceeded to the fourth floor of the boiler room to help clean the fire room for four hours.  (D.I. 131, Ex. B at 79:23-80:21).  The particles generated by the work continuing on the first floor reached Mr. Cox while he was on the fourth floor and made breathing more difficult.  (D .I. 131, Ex. A at 31:2-32:3).  Every five days Mr. Cox returned to the first floor of the boiler room to clean; he would sweep the floors with a large broom, which created dust in the air. (*Id.* at 46:23-48:4).

### ii. Plaintiffs' product identification evidence relevant to Foster Wheeler

Mr. Cox was deposed on April 10, 2019.  (D.I. 12).  Mr. Cox testified that Foster Wheeler had manufactured the four boilers in the boiler room of the *USS Chukawan* during his service onboard.  (D.I. 131, Ex. A at 21:25-22:2).  Mr. Cox knew that Foster Wheeler had manufactured the boilers onboard because he saw the Foster Wheeler name on each boiler.  (D.I. 131, Ex. B at 86:12-87:3).  Plaintiff retained Captain William Lowell ("Captain Lowell") as an expert witness in this case.[3]  (D.I. 110).  Captain Lowell testified at a deposition on January 23, 2020, and prepared an expert report dated September 24, 2019.  (D.I. 57; D.I. 110).  At his deposition, Captain Lowell confirmed that, during Mr. Cox's service onboard the *USS Chukawan*, four Foster Wheeler boilers would have been present.  (D.I. 131, Ex. D at 26:18-21).  He testified that punching tubes would result in gaskets and padding being disturbed inside the boilers, taking the pad off of the steam drum manhole, and changing the gasket out on the manhole.  (D.I. 131, Ex.

---

[3]   According to the Report, the parties stipulated that Captain Lowell's September 24, 2019 report and the transcript of his January 23, 2020 deposition are admissible for the purposes of product identification and nexus summary judgment motions despite his death on or about February 16, 2020.  (D.I. 110).

D at 80:6-15).   Captain Lowell also testified that, from 1964 until 1980, Foster Wheeler boilers used asbestos-containing gaskets.   (*Id.* at 85:9-87:24).

## II.   <u>LEGAL STANDARDS</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (quoting FED. R. CIV. P. 56(e)).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).  The Court may not grant summary judgment if a "reasonable jury could return a verdict for the nonmoving party."  *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).  "[The] mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248; *Horowitz v. Federal*

*Kemper Life Assurance Co.*, 57 F.3d 300, 302 (3d Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III.   DISCUSSION

Foster Wheeler argues that the Report erred by: 1) recommending denial of Defendant's summary judgment motion because "the record is devoid of competent evidence of exposure to asbestos owing to a Foster Wheeler product to a degree sufficient to substantiate causation" (D.I 150 at 2); 2) relying on Captain Lowell (*id.* at 6); 3) incorrectly interpreting "the narrow exception to maritime law's general rule that an equipment manufacturer is not liable for an injury caused by a third-party product used with its equipment" (*id.* at 7); and 4) relying on the affidavit of Walter Newitts (*id.* at 9).  The Court will address each purported error in turn.

### A.   Evidence of Asbestos Exposure From a Foster Wheeler Product

Foster Wheeler objects to the Report's finding that the "frequency, regularity, or proximity" of Mr. Cox's work on and around Foster Wheeler boilers is sufficient to create an issue of material fact regarding substantial factor causation arguing that the Report 1) "misstates the criteria to establish causation as disjunctive when Plaintiffs must establish all three criteria" (citing *Lohrman v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63) and 2) is based on impermissible speculative inferences as to the quantity or duration of "exposures" Plaintiffs can attribute to any Foster Wheeler product as well as incompetent evidence of asbestos content of any product purportedly related to any Foster Wheeler boiler."  (D.I. 150 at 2).

As to the citation to *Lohrman*, a case applying Maryland law, the parties agree that maritime law applies here.  Under maritime law, a plaintiff in an asbestos case must show that 1) the injured plaintiff was exposed to the defendant's product, 2) the product was a substantial factor in causing the plaintiff's injury, and 3) the defendant manufactured or sold the asbestos-containing products to which plaintiff alleges their exposure.  *In re Asbestos Litig. (Dumas)*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015).  Causation under maritime law can be established by testimonies or circumstantial evidence which supports the inference that the plaintiff was exposed to defendant's products.  *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)).  Plaintiff must also show that there was "a high enough level of exposure" to the defendant's asbestos-containing products to infer that the plaintiff's injury was not simply "conjectural" and that the defendant's product was, in fact, a "substantial factor" to the injury.  *Id.*

The Court agrees with the conclusion in the report that Plaintiff has made a requisite showing to avoid summary judgment.  Mr. Cox identified the boilers onboard the *USS Chukawan* as Foster Wheeler boilers.  There is evidence that Foster Wheeler boilers on the ship contained asbestos.  (D.I. 155, Ex. C at 26:18-21; Ex. A at 21:14-24).  Mr. Cox spent twelve (12) hours a day for twenty-one (21) months working in the ship's boiler room where Foster Wheeler's asbestos-containing boilers were located.  (*Id.*, Ex. B at 79:23 –80:25; Ex. A at 19:11-12, 49:13-15).  Mr. Cox testified that during the twelve hours, he was either working on the Foster Wheeler boilers himself or in close proximity to others as they worked on the boilers in the same room, exposing them to asbestos from the boilers.  (*Id.*, Ex. B at 86:5-8, Ex. A at 22:2-7, 30:15-31:21).  Additionally, Mr. Cox frequently swept the floor of the boiler room with a large broom, disturbing and inhaling quantities of dust and particles that had settled on the floor.  (*Id.*, Ex. A at 47:5-25).

Mr. Cox did not know at the time that asbestos was harmful to his health until years later.  (*Id.*, Ex. B at 73:12-23).

Additionally, there is a question of fact as to whether Mr. Cox's exposure to Foster Wheeler's asbestos-containing boilers was a substantial factor in his injury.  There is some evidence that Foster Wheeler's boilers manufactured and sold during the relevant time period contained asbestos.  (*Id.*, Ex. D at 13-16).  Mr. Cox testified to working on and near the Foster Wheeler boilers onboard the ship and believed that he was exposed to asbestos from the boilers. Expert witness testimony and other evidence supports and corroborates the testimony of Mr. Cox. (*Id.*).  The frequency, duration, and quantity of Mr. Cox's exposure to Foster Wheeler's asbestos-containing boilers supports the legal conclusion Foster Wheeler's products were a substantial factor to the development of Mr. Cox's illness.  To the extent that Foster Wheeler challenges the credibility of the testimony, that is an issue for the jury – not for summary judgment.

### B.    Reliance on Captain Lowell

Foster Wheeler argues that the Report's "reference to Captain Lowell's testimony improperly replaces Mr. Cox's actual testimony with Captain Lowell's interpretation of what he believes Mr. Cox's exposures would have been."  (D.I. 150 at 6).  The Court disagrees.

Captain Lowell was a Naval Engineering Officer with more than 30 years of experience serving on dozens of navy vessels, including on auxiliary craft similar to the *USS Chukawan*. (D.I. 155, Ex. D at 1-2).  He has extensive knowledge of the machinery and equipment used onboard navy vessels, and the use of asbestos material in that equipment.  Captain Lowell was also familiar with the type of work that Mr. Cox did as a boiler tender.  (*Id.,* Ex. D at 12).

Captain Lowell's testimony did not replace Mr. Cox's testimony.  It corroborated Mr. Cox's identification of Foster Wheeler boilers onboard the *USS Chukawan*.  Captain Lowell

testified that Foster Wheeler boilers on the *USS Chukawan* contained asbestos, noting that the boilers would have been delivered with asbestos-containing packing, gaskets, and insulation, and that they were intended to be replaced with asbestos-containing replacement parts. (*Id.*, Ex. D at 15). He further testified that Foster Wheeler was "involved in the design and the development of military specifications for their equipment, as well as the use and incorporation of asbestos-containing products for use on and with their equipment." (*Id.*, Ex. D at 5). Captain Lowell's testimony provided supplementary and corroborating information about the practices of the Navy in its equipment acquisition process, Foster Wheeler's involvement in designing and developing the equipment, and other factual evidence supporting the notion that Foster Wheeler's boilers onboard the *USS Chukawan* contained asbestos and required asbestos containing replacement parts. The Report did not err in relying on that testimony.

### C.   Interpreting Maritime Law

Foster Wheeler objects that the Report's "application of the 'requires' test identified in *Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986 (2019) incorrectly interprets the requirements of the overall *DeVries* standard." (D.I. 150 at 7). *Devries* established that that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

Here, the Court agrees with the conclusion of the Report that there are genuine issues of material fact as to each of the three "prongs" of *Devries*. First, there is an issue of fact whether Foster Wheeler required the use of asbestos containing replacement parts for their boilers onboard ships like the *USS Chukawan* due to conflicting evidence and testimonies from the Plaintiff and

Defendant.  Second, there is an issue of fact as to whether Foster Wheeler knew or reasonably should have known that end users, such as Mr. Cox, would be exposed to the asbestos incorporated into their products during the normal course of operation and foreseeable repairs as necessary.  As the Report noted, "[t]he record suggests that Foster Wheeler had actual knowledge of the dangers of asbestos exposure as early as 1968, and may have had constructive knowledge even earlier" and that Foster Wheeler either knew or should have known that normal operations of their boilers would "necessitated regular removal and replacement of gaskets and packing material" which contained asbestos.  (D.I. 148 at 16).  And third, there is evidence that during Mr. Cox's time in the Navy, the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees.  (D.I. 121 at 10 (citing D.I. 121, Ex. O at 1, Ex. I ¶¶ 113-20)); *see Hammell v. Air & Liquid Sys. Corp.*, 2020 WL 5107478, at *7 (D.N.J. Aug. 31, 2020) ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards.").  As in *Hammell,* there is thus a genuine issue of fact in dispute.

### D.    The Affidavit of Walter Newitts

Foster Wheeler argues that the Report erred in relying on an affidavit of Walter Newitts. Specifically, it argues that Mr. Newitts affidavit is not competent and has been rejected in other cases and that even if it were competent, it is limited to boilers in powerhouses and does not apply to boilers on navy vessels.  Again, the Court disagrees.

As to competency, Foster Wheeler cites to two cases in which Mr. Newitts' affidavit was rejected as applied to marine boilers.  (D.I. 150 at 9 (citing *Evans v. Alfa Laval, Inc.*, C.A. No. 15-

681-ER-SRF, 2017 WL 3736686, at \*5 (D. Del. August 30, 2017), report and recommendation adopted, 2018 WL 1704691 (D. Del. Apr. 9, 2018) and *Tallman v. CBS Corporation*, C.A. No. 15-395-GMS-SRF, 2017 WL 3592451, at \*5 (D. Del. August 21, 2017)).  Those cases, however, were decided before the Supreme Court's decision in *Devries*, in which the Supreme Court rejected "the more defendant-friendly bare-metal defense," under which "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ."

Here, the Newitts Affidavit provides some evidence regarding Foster Wheeler boilers during the relevant time period.  Although it referenced "powerhouses" and not naval applications, it did purport to encompass "every boiler."  The Newitts Affidavit is also some evidence that Foster Wheeler had actual knowledge of the dangers of asbestos in 1968 and addresses that Foster Wheeler enacted safety protocols for its employees working with asbestos, including the use of respirators, and exhaust systems.  (D.I. 131, Ex. E at 6).  The Newitts Affidavit thus provides relevant evidence and was properly relied on (in addition to the other evidence).

## IV.   CONCLUSION

For the reasons stated above, Defendant's objections are OVERRULED, the Report is ADOPTED, and Defendant's motion for summary judgment is DENIED.  An appropriate order will issue.